United States District Court
Southern District of Texas
**ENTERED**
June 11, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *ex rel.* LYNDA PINTO, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-18-2674 |
| | § | |
| RICK NASSENSTEIN, | § | |
| | § | |
| Defendant. | § | |

ORDER ON PENDING MOTION

Pending is Defendant Rick Nassenstein's Motion to Dismiss (Document No. 54) wherein Nassenstein seeks to dismiss under Rule 12(b)(6) the United States' 51-page Complaint in Partial Intervention. Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted[.]" FED. R. CIV. P. 12(b)(6). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the

speculative level," assuming "that all the allegations in the complaint are true (even if doubtful in fact)[.]" Twombly, 127 S. Ct. at 1964-65 (internal citations omitted). "In cases of fraud, Rule 9(b) has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 185 (5th Cir. 2009). But "Rule 9(b) does not reflect a subscription to fact pleading and requires only simple, concise, and direct allegations of the circumstances constituting fraud, which after Twombly must make relief plausible, not merely conceivable, when taken as true." Id. at 186 (internal citation and quotation marks omitted).

In evaluating a motion to dismiss under Rule 12(b)(6), the Court "must accept all well-pleaded facts as true" and view those facts "in the light most favorable to the plaintiff." Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019) (citation omitted). "A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted." Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009) (quoting Gregson v. Zurich Am. Ins. Co., 322 F.3d 883, 885 (5th Cir. 2003)).

The United States alleges that Nassenstein as President, Chief Financial Officer ("CFO"), and one-third owner of Cardiac Imaging, Inc. ("CII") orchestrated a scheme to bill Medicare in violation of the Physician Self-Referral Law, 42 U.S.C. § 1395nn

(commonly referred to as the "Stark Law"). Nassenstein knowingly caused CII to enter into financial relationships with physicians who were contractually required to refer their patients to CII for mobile cardiac PET scans and in turn CII paid the referring physicians a "supervising" fee that exceeded the fair market value of any services they actually provided. CII operated its mobile cardiac PET scan business out of semi-trailer trucks that CII drove to physicians' practices. Between 2017 and June 2023, Nassenstein's fraudulent conduct caused CII to submit over 75,000 claims to Medicare for patient services referred to CII by the CII-paid physicians in violation of the Stark Law, rendering the claims materially false within the meaning of the False Claims Act. Medicare paid tens of millions of dollars in false claims as a result of Nassenstein's conduct, and Nassenstein was handsomely compensated in return. While President of CII, Nassenstein received an annual salary of $500,000 and distributions of more than $2.37 million.

Relator Lynda Pinto, a billing manager for CII, filed this *qui tam* action against CII, Nassenstein, and Samuel Kancherlapalli, CII's current owner. The United States settled with CII and Kancherlapalli and later filed its Complaint in Partial Intervention against Nassenstein, asserting claims under

3

the False Claims Act and under common law for unjust enrichment and payment by mistake.

Nassenstein argues first that the Court must dismiss the United States' allegation that Nassenstein submitted or caused to be submitted a false claim for payment in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) because the Complaint "does not identify a single individual employed by CII who actually submitted or was involved in submitting any false claims to Medicare on CII's behalf."[1] The law does not require the identity of an employee who files the false claims in order to hold Nassenstein responsible.

> The FCA applies to anyone who knowingly assists in causing the Government to pay claims grounded in fraud, without regard to whether that person has direct contractual relations with the Government. "Knowing assistance" does not require that a person "be the one who actually submitted the claim forms in order to be liable."

<u>United States v. Corp. Mgmt., Inc.</u>, 78 F.4th 727, 741 (5th Cir. 2023)(quoting <u>U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.</u>, 355 F.3d 370, 378 (5th Cir. 2004)). Here, it is alleged that *all* of the claims CII submitted to Medicare from 2017 through June 2023 for CPT Codes 78491 and/or 78492 violated the Stark Law and were thus materially false because CII paid the referring physician illegal fees. As CII's president and CFO, Nassenstein orchestrated

---

[1] Document No. 54 at 13.

4

the scheme to pay the illegal fees to obtain referrals for services for which Medicare would be billed in violation of the Stark Law. Nassenstein negotiated and signed the agreements with physicians for the illegal fees and signed Medicare enrollment forms to add new referring physicians while certifying falsely that CII complied with the Stark Law and the Federal Claims Act. He further procured a sham opinion letter to help recruit new physicians to refer patients to CII and to assuage physician concerns about the legality of the payment scheme. The Complaint identifies representative examples of physician fee agreements and Medicare forms Nassenstein signed to perpetuate the scheme to bill Medicare in violation of the Stark Law. The Complaint further identifies representative examples of false claims CII presented to Medicare for payment in carrying out Nassenstein's scheme. The Complaint alleges particular details of the scheme to submit false claims--*i.e.*, claims violating the Stark law--paired with reliable indicia that leads to a strong inference that Nassenstein knowingly assisted in causing false claims actually to be submitted, which is sufficient to state a claim. *See* Kanneganti, 565 F.3d at 190.

Next, Nassenstein argues that the Court must dismiss the United States' allegation that Nassenstein knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B) because the allegations are too

vague. However, the United States specifically alleges that Nassenstein frequently signed Form 855B Medicare enrollment forms wherein he falsely certified compliance with the Stark Law. CII was required to submit a signed Form 855B each time it added a new referring physician. Between 2017 and 2020, Nassenstein, as CII's president and its authorized official, signed numerous Medicare enrollment forms for new referring physicians in which Nassenstein falsely certified CII's compliance with applicable law, including the Stark Law, which enabled CII to bill Medicare for the PET scans in knowing violation of the anti-kickback statute and the Stark Law.

Finally, Nassenstein argues that the unjust enrichment and payment by mistake claims must be dismissed because the Complaint fails to plead a causal link that Nassenstein received government funds. The United States pleads facts, however, that support a reasonable inference that substantial portions of the millions Nassenstein received from CII originated from government payors paying claims made by CII in violation of the Federal Claims Act and the Stark Law.

Defendant Rick Nassenstein's Motion to Dismiss Complaint in Partial Intervention (Document No. 54) is DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 11TH day of June, 2024.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE